### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### AT COVINGTON

**CIVIL ACTION NO. 14-109-DLB-JGW**

**EMERALD INTERNATIONAL CORPORATION**          **PLAINTIFF**

**vs.**          <u>**MEMORANDUM OPINION AND ORDER**</u>

**WWMV, LLC**          **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff Emerald International Corporation ("Emerald") moves for partial summary judgment with respect to its breach of contract claim against Defendant WWMV, LLC. ("WWMV"). Because WWMV has failed to supply any amount of coal in accordance with the parties' executed purchase order, Emerald requests that its $500,000 prepayment be returned in full. Emerald also seeks reimbursement of related attorneys' fees. The Court has jurisdiction over this removed action pursuant to 18 U.S.C. § 1332.

## I.     Factual and Procedural Background

Emerald is an Ohio corporation that buys and sells coal products. (Doc. # 1-2 at 2, ¶ 1). Its principal place of business is located in Florence, Kentucky. (*Id.*) WWMV is a coal mining company headquartered in Charleston, West Virginia. (*Id.* at 2, ¶ 1). On May 2, 2013, the parties executed a purchase order ("P.O.") wherein Emerald agreed to purchase, and WWMV agreed to sell, approximately 600,000 net tons of "U.S. Steam coal." (*Id.* at 8). The terms of this exchange are contained in the P.O.'s "guaranteed specifications,"

which provide that WWMV will supply roughly 30,000 net tons of coal every month from

June 2013 through June 2015.  (*Id.*)  In return, Emerald would pay $58.85 for each net ton

received.  (*Id.*)  The guaranteed specifications also contain terms regarding the coal's

required moisture, ash, sulfur, BTU and size.  (*Id.*)

Below the guaranteed specifications, just before the parties' signatures, the P.O.

includes a single paragraph, which states as follows:

> Upon acceptance of this PO and the PO Terms by you, Emerald will
> wire $500,000 to an account designated in writing by you as pre-payment on
> the coal described in this PO, and you (and your agents and representatives)
> shall cease all discussions with any third parties (other than Patriot Coal
> Corporation) regarding the acquisition of rights to sublease or mine the
> Wildcat mine. Additionally, you agree that Emerald shall have the exclusive
> and first right, but not the obligation to purchase approximately 600,000 tons
> of coal of similar quality at the same price from the Wildcat mine when such
> rights are acquired by you.

(*Id.*)  On the back of the P.O., there are numerous other terms and conditions, including a

section entitled "Governing Law; Venue," which contains a forum selection clause that

identifies the United States District Court for the Eastern District of Kentucky as having

exclusive jurisdiction over any federal lawsuit arising from the parties' agreement.  (*Id.* at

9).  This section also states that "[i]n any action where Buyer is the successful party, Buyer

shall be awarded reasonable attorney's fees and costs."  (*Id.*)

The parties stipulate that after the P.O. was executed, Emerald made a $500,000

payment to WWMV.  (Doc. # 6 at 1, ¶ 5).  The parties further agree that WWMV has yet to

supply Emerald with any coal.  (Doc. # 10 at 1; Doc. # 8-1 at 2-3).  WWMV explains that

it attempted to deliver some amount of coal in June 2014 (after this lawsuit was filed), but

insists that Emerald rejected this offer.  (Doc. # 10 at 2-3).  WWMV also maintains that it

has fully complied with its promise not to negotiate the Wildcat mine with any third parties. (*Id.* at 2).

Despite Emerald's request, WWMV has refused to return the $500,000 payment. (Doc. # 6 at 2, ¶ 9).  As a result, Emerald filed suit on May 19, 2014 in Boone County, Kentucky, alleging claims against WWMV for breach of contract, breach of good faith and fair dealing, promissory estoppel and unjust enrichment.  (Doc. # 1-2 at 4-6).  With respect to each claim, Emerald asks for damages of no less than $500,000 plus attorney's fees. (*Id.* at 6-7).  WWMV promptly removed the action to this Court and filed its answer on June 16, 2014.  (Doc. # 6).

## II.    Analysis

### 1.    Applicable Law

Federal courts sitting in diversity apply federal procedural law.  *Hanna v. Plumer*, 380 U.S. 460, 465 (1965).  The substantive law of the forum state governs the claims asserted.  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Moore v. Coffey*, 992 F.2d 1439 (6th Cir. 1993); *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 165 (6th Cir. 1993).  Therefore, the Court will evaluate this Motion in accordance with the Federal Rules of Civil Procedure, while applying Kentucky substantive law to the various causes of action.

The Kentucky Uniform Commercial Code ("UCC") applies to transactions in goods. KRS § 355.2-102.  However, "[u]nless displaced by the particular provisions of the Uniform Commercial Code, the principles of law and equity . . . supplement its provisions."  KRS § 355.1-103.  Although the case at hand involves a contract to purchase to coal, most of the

3

pertinent legal issues are not covered by the Kentucky UCC.[1]  As a result, the Court relied primarily on principles of common law in resolving Emerald's claims.

### 2.   Standard of Review

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If there is a dispute over facts that might affect the outcome of the case under governing law, then entry of summary judgment is precluded.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party has the ultimate burden of persuading the court that there are no disputed material facts and that he is entitled to judgment as a matter of law.  *Id.*  Once a party files a properly supported motion for summary judgment by either affirmatively negating an essential element of the non-moving party's claim or establishing an affirmative defense, "the adverse party must set forth specific facts showing that there is a genuine issue for trial."  *Id.* at 250.  "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]."  *Id.* at 252.

### 3.   Procedural Issues

#### a.   *This Court has jurisdiction over WWMV.*

The great weight of authority suggests that a valid forum selection clause precludes a party to the contract from challenging personal jurisdiction.  *See Burger King Corp. v.*

---

[1] Coal is considered a good within the scope of the Kentucky UCC. *See Kentucky Utilities Co. v. S. E. Coal Co.*, 836 S.W.2d 392, 397 (Ky. 1992) ("The coal supply agreement, as an instrument for the sale of goods, does trigger the UCC."); *see also* KRS § 355.2-107 ("A contract for the sale of minerals or the like (including oil and gas) or a structure or its materials to be removed from realty is a contract for the sale of goods within this article if they are to be severed by the seller.").

*Rudzewicz*, 471 U.S. 462, 490 n.14 (1985) (explaining that where forum selection clauses "have been obtained through 'freely negotiated' agreements . . . their enforcement does not offend due process."); *Preferred Capital, Inc. v. Associates in Urology*, 453 F.3d 718, 721 (6th Cir. 2006) (*"*A forum selection clause is one way in which contracting parties may agree in advance to submit to the jurisdiction of a particular court."); *KFC Corp. v. Wagstaff*, 502 B.R. 484, 489 (W.D. Ky. 2013) ("A party to a contract may waive its right to challenge personal jurisdiction by consenting to personal jurisdiction through a forum selection clause." (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 11 (1972)).

A forum selection clause will be upheld "absent a strong showing that it should be set aside." *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009). In assessing whether to enforce a forum selection clause, courts look to the following factors: "(1) whether the clause was obtained by fraud, duress, or other unconscionable means; (2) whether the designated forum would ineffectively or unfairly handle the suit; and (3) whether the designated forum would be so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* The burden of contesting a forum selection clause rests with the party opposing it. *Id.*

WWMV contends that this Court lacks personal jurisdiction over it, emphasizing that it "took no action in Kentucky with respect to the alleged transaction," that "[e]very meeting of the parties . . . occurred in Charleston, West Virginia,"  and that the P.O. was sent to Emerald's attorneys in Ohio, not Kentucky. (Doc. # 10 at 1; Doc. # 6 at 3-4). In response, Emerald points to the forum selection clause in the parties' executed contract, which designates the Eastern District of Kentucky as the exclusive forum for any federal action. (Doc. # 1-2 at 9).

5

The Court finds that it does have personal jurisdiction over WWMV.  Based on the above cited case law, the forum selection clause within the P.O. is valid unless proven otherwise.  The burden to bring such proof lies with WWMV, and yet it has failed to put forth a single argument as to why the clause should not be enforced.  As a result, WWMV has submitted to the Court's jurisdiction and waived any right to argue otherwise. Furthermore, had there been no forum selection clause to begin with, even a cursory review of the facts reveals that WWMV has the requisite contacts with Kentucky to establish jurisdiction.  Regarding interstate contractual arrangements, "the Supreme Court has held that parties that reach out beyond one state to create relationships with citizens of another are subject to regulation and sanctions in the other state for the consequences of their activities, regardless of whether they were actually present in that state." *Creech v. Roberts*, 908 F.2d 75, 79 (6th Cir. 1990) (citing *Burger King Corp.*, 471 U.S. at 473). WWMV purposefully executed a contract with a company that has its principal place of business located in Kentucky.  Therefore, regardless of where the negotiations or certain other activities took place, it would not offend Due Process for this Court to exercise jurisdiction over WWMV.

b.    *Emerald's motion for summary judgment is not premature.*

Rule 56 allows a motion for summary judgment to be filed before discovery has taken place.  *See* Fed. R. Civ. P. 56(b) ("[A] party may file a motion for summary judgment at any time until 30 days after the close of all discovery.").  Nevertheless, the Sixth Circuit has consistently held that a non-movant "must receive a full opportunity to conduct discovery to be able to successfully defeat [the motion]." *Ball v. Union Carbide Corp.*, 385 F.3d 713, 719 (6th Cir. 2004) (citation and internal quotations omitted).  If a non-movant

6

believes that a motion for summary judgment is premature, it must file an affidavit pursuant to Rule 56(d), allowing the court to consider whether additional discovery is needed. Fed. R. Civ. P. 56(b); *see also Ball*, 385 F.3d at 720. The affidavit should express the non-movant's "need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

WWMV has failed to demonstrate that Emerald's Motion is premature, both procedurally and on the merits. First, WWMV only raises this issue within its response; it did not file a separate affidavit pursuant to Rule 56(d).[2] Also, the response merely states that the "action is only seven weeks old," and that "there is no record to examine or discovery conducted." (Doc. # 10 at 3). WWMV says absolutely nothing regarding its "need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." Moreover, this Motion depends in large part on issues of contract interpretation, which are questions of law that can be adjudicated based on the record presently before the Court. And regarding the material issues of fact addressed herein, the Court cannot envision any additional discovery that would alter its ruling. Accordingly, the Court sees no reason to deny or defer Emerald's Motion for Partial Summary Judgment as premature.

---

[2] WWMV did file an affidavit containing the testimony of Ralph Ballard, a manager at WWMV. However, the Court is certain that this filing was not made pursuant to Rule 56(d). While it covers a number of issues relevant to Emerald's motion, it does not once refer to Rule 56(d), and it says absolutely nothing regarding WWMV's "need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information." (*See* Doc. # 10-1).

4.      **Breach of Contract**

      a.      <u>*The parties' agreement involves two separate transactions*</u>.

The meaning and legal effect of a contract is an issue of law for the court to decide. *FS Investments, Inc. v. Asset Guar. Ins. Co.*, 196 F. Supp. 2d 491, 497 (E.D. Ky. 2002). In matters of contract interpretation, the goal of the court is "effectuate the intentions of the parties." *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. 2002). If a contract is ambiguous, meaning "a reasonable person would find it susceptible to different or inconsistent interpretations," the court may determine the parties' intent based on extrinsic evidence of "the circumstances surrounding execution of the contract, the subject matter of the contract, the objects to be accomplished, and the conduct of the parties." *Id.* at 385. If, however, the contract is unambiguous, the court may look "only as far as the four corners of the document to determine [the parties'] intent." *VIBO Corp. v. Conway*, 669 F.3d 675, 688 (6th Cir. 2012). In other words, the court must strictly enforce the contract terms "by assigning language its ordinary meaning and without resort to extrinsic evidence." *Frear v. P.T.A. Indus., Inc.*, 103 S.W.3d 99, 106 (Ky. 2003).

In several key respects, Emerald and WWMV interpret the structure of the agreement quite differently. Their most fundamental dispute concerns whether or not the P.O. contemplates more than one distinct transaction. Whereas Emerald construes the transaction beginning in June 2013 as separate and apart from the transaction involving the Wildcat mine, WWMV believes they are one and the same. (Doc. # 8-1 at 6; Doc. # 10 at 4-5). This particular issue has great influence over the remainder of the Court's analysis. And thus, before addressing any substantive arguments, it will be necessary to first clarify the basic structure of the parties' agreement.

8

Giving the language in the P.O. its ordinary meaning, the Court finds that the parties have indeed negotiated two separate transactions. The first consists of WWMV's promise to supply roughly 600,000 net tons of U.S. Steel coal from June 2013 through June 2015, and Emerald's return promise to pay a set price for each net ton delivered. This transaction is based on the guaranteed specifications within the P.O., which say nothing of the Wildcat mine, or any other mine for that matter; rather, the source of the coal is left unspecified. The second transaction arises from the paragraph just below the guaranteed specifications, wherein the parties state, "Additionally, [WWMV agrees] that Emerald shall have the exclusive and first right, but not the obligation, to purchase approximately 600,000 tons of coal of similar quality at the same price from the Wildcat mine when such rights are acquired by [WWMV]." (Doc. # 1-2 at 8). The Court interprets this language as denoting a second transaction because of the word "additionally," and due to the phrase "of similar quality at the same price," both of which plainly acknowledge an already existing transaction based on previously stated terms. The separate nature of these transactions is also evident from their respective start dates. While the first transaction is clearly scheduled to begin in June 2013, the second transaction would not commence until WWMV has acquired rights to the Wildcat mine.

WWMV argues that the contract must have contemplated a single transaction because it only explicitly refers to one mine (the Wildcat mine). (Doc. # 10 at 5). For the reasons noted above, this interpretation cannot be reconciled with the ordinary meaning of the language within the P.O. Nonetheless, WWMV submitted extrinsic evidence to bolster its position, consisting of email correspondence and the affidavit of Ralph Ballard, a manager at WWMV. (Doc. # 10-1). But because the P.O. is unambiguous regarding this

9

matter, the Court will not rely on this evidence in forming a conclusion.  Even if it had, the most relevant item only reinforces what the Court has already found.  Ralph Ballard states in his affidavit that WWMV attempted to deliver coal to Emerald in June 2014.  (Id. at 2, ¶ 14).  This offer was made even though WWMV had not acquired any rights to mine the Wildcat mine, meaning its duty to perform under the second transaction had to yet to arise. In the Court's opinion, such conduct strongly suggests that WWMV did in fact recognize a separate obligation based on the terms of the first transaction.[3]

In summary, the Court finds that WWMV's promise to supply 600,000 net tons of coal over a two-year period, regardless of its source, is *separate and apart* from its promise to give Emerald an exclusive right to purchase the same amount of coal from the Wildcat mine.  Going forward, the Court will at times refer to these transactions, respectively, as the "first transaction" and "second transaction."

b.   *The condition precedent to the second transaction relates to the performance of an obligation, not contract formation, and therefore does not defeat Emerald's claim of breach.*

A condition precedent may pertain to the formation of the contract itself, or to the performance of a specific obligation within the contract.  *Mercury Dev., LLC v. Motel Sleepers, Inc.*, Case No. 11-147, 2013 WL 5374184, at *3 (E.D. Ky. Sept. 25, 2013).  The former is called a *condition to formation* and the latter a *condition to performance*.  For present purposes, the key distinction between the two is that the failure of a condition to formation will invalidate the entire agreement, *Clarion Mfg. Corp. Of Am. V. Justice*, 971 S.W. 2d 288, 289-90 (Ky. 1988), whereas the failure of a condition to performance merely

---

[3] The Court reviewed the email correspondence as well, but found it highly confusing and not supportive of WWMV's interpretation regarding the parties' agreement.

excuses the obligation subject to that condition, allowing the balance of the contract to remain intact. *Mercury Dev., LLC*, 2013 WL 5374184 at *5 (citing *Breckinridge Cnty. V. Beard*, 27 S.W.2d 427, 429 (Ky. 1930)).

Kentucky courts have consistently found that a condition to formation exists where a party to the contract cannot fully assent absent the approval of a superior third party. *See Green River Steel Corp. V. Globe Erection Co.*, 294 S.W.2d 507, 510 (Ky. 1956) (contract was not binding until approved by a third-party government agency); *Hopkins v. Performance Tire & Auto Serv. Ctr., Inc.*, 866 S.W.2d 438, 441 (Ky. Ct. App. 1993) (contract required the approval of a party's parent company); *In re Big Rivers Elec. Corp.*, 233 B.R. 726, 734 (W.D. Ky. 1998) (contract had to be authorized by the bankruptcy court). However, outside of this context, the Kentucky Supreme Court has cautioned against finding a condition to formation unless "required to do so by plain, unambiguous language or by necessary implication." *Honaker v. Duro Bag Mfg. Co.*, 851 S.W.2d 481, 483 (Ky. 1993) (quoting *A.L. Pickens Co. V. Youngstown Sheet and Tube Co.*, 650 F.2d 119, 121 (6th Cir. 1981)).

WWMV submits that its obligation to supply Emerald with coal was subject to the conditional language "when such rights are acquired by you." (Doc. # 1-2 at 8). Thus, WWMV contends that its acquisition of rights to the Wildcat mine "was and remains the predicate and condition precedent, which must be satisfied before WWMV has *any obligation* to repay Plaintiff or to supply coal on any terms to Plaintiff." (Doc. # 6 at 4-5) (emphasis added). Because those rights were never acquired, but efforts with respect thereto are ongoing, WWMV concludes that its obligation to deliver coal was never triggered, and therefore it could not have breached the parties' agreement.

11

However, the Court found above that the contract consists of two transactions.  The guaranteed specifications in the P.O., which contain the terms for the first transaction, clearly omit any reference to the Wildcat mine.  As such, the condition precedent cited by WWMV applies exclusively to the second transaction.   If this condition is one of performance, then the fact that it never occurred would only relieve WWMV's obligation to provide coal from the Wildcat mine, leaving Emerald's claim of breach with respect to the first transaction unimpeded.  If, on the other hand, the condition is one of formation, then its nonoccurrence would invalidate the entire contract, and Emerald's claim would fail as a result.[4]

The Court finds that the parties did not intend for the aforesaid condition to function as a condition to formation.  At the time the P.O. was executed, on May 2, 2013, WWMV had not obtained any rights to mine the Wildcat mine; and yet, it promised to begin delivering coal to Emerald the very next month.  The "necessary implication" of this arrangement – aside from proving that there are in fact two separate transactions – is that the parties intended to go forward with a substantial part of the contract regardless of whether the condition precedent was fulfilled. Structuring their agreement in this manner clearly demonstrates that the condition was one of performance, and not formation.  The same conclusion is supported by the language creating the condition.  The parties certainly could have drafted the P.O. to remove any doubts whatsoever, perhaps stating, "This entire contract is not valid unless and until WWMV acquires rights to mine the Wildcat mine."

---

[4] Just because Emerald's claim for breach of contract would fail does not mean that it would be without recourse altogether.  Indeed, Emerald has pled two alternative causes of action: restitution and promissory estoppel.

12

However, they did not, and the Court finds that the language actually used cannot reasonably be described as "plain and unambiguous."

Based on the foregoing analysis, the condition precedent is a condition to performance. More specifically, it is a condition to WWMV's performance with respect to the second transaction alone. Because the condition does not relate to formation, the fact that it was never fulfilled does not invalidate the parties' agreement. And because the condition does not pertain at all to the first transaction, Emerald's claim for breach of contract is unaffected by WWMV's failure to acquire rights in the Wildcat mine.

c.  *WWMV's failure to perform under the first transaction constitutes a material breach of the parties' agreement overall.*

Emerald's argument concerning breach is fairly straightforward. After executing the agreement, Emerald wired $500,000 to WWMV as a prepayment on the coal that would be delivered in June 2013. WWMV admits that it received this payment and that the funds remain in its possession. (Doc. # 6 at 2, ¶ 9). However, more than a year has passed since the first scheduled delivery and Emerald has yet to receive any coal whatsoever. Accordingly, Emerald submits that WWMV has materially breached the contract.[5]

WWMV disagrees. While conceding that no amount of coal has been successfully delivered, WWMV maintains that Emerald's $500,000 payment was not a prepayment at all; rather, it was made solely in exchange for WWMV's promise not to negotiate the

---

[5] The Kentucky UCC provides that "if the goods or the tender of delivery fail in any respect to conform to the contract, the buyer may (a) reject the whole; or (b) accept the whole; or © accept any commercial unit or units and reject the rest." KRS § 355.2-601. Based on this provision, which is Kentucky's version of the Perfect Tender Rule, there is no question that WWMV breached its promise to deliver coal under the first transaction. However, the parties' agreement in this case consists of more than one exchange. Therefore, as explained in greater detail below, the question for the Court is whether WWMV's failure with respect to the first transaction constitutes a material breach even though WWMV fulfilled its promise under second transaction.

Wildcat mine with anyone but Emerald.[6]  Because no such discussions have taken place, WWMV insists that Emerald received exactly what it bargained for, and therefore no breach has occurred.

Clearly, the parties take different positions with respect to the consideration that induced Emerald's $500,000 payment.  Once again, their dispute stems from the inconsistent interpretations they have regarding the structure of the agreement.  While Emerald insists that its payment was purely a deposit for the coal related to the first transaction, WWMV believes it was paid solely to prevent any third-party negotiations concerning the Wildcat mine, thereby securing Emerald's right of first refusal with respect to the second transaction.  (Doc. # 8-1 at 5; Doc. # 10 at 4-5).  Thus, before addressing the issue of material breach, the Court must determine whether Emerald's $500,000 payment served as consideration for the first transaction, the second transaction, or both.

The P.O. states that "Emerald will wire $500,000 to an account designated in writing by [WWMV] as pre-payment on the coal described in this PO, and [WWMV and its agents] shall cease all discussions with any third parties (other than Patriot Coal Corporation) regarding the acquisition of rights to sublease or mine the Wildcat mine." (Doc. # 1-2 at 8).  The Court emphasizes that Emerald's prepayment was made specifically for "the coal described in this P.O."  This phrase cannot have been referring to coal from the Wildcat mine because the P.O. had yet to mention the Wildcat mine.  Instead, the parties must have been referencing the 600,000 net tons of coal to be delivered from June 2013 through

---

[6] The Court recognizes that the P.O. actually allows WWMV to negotiate the Wildcat mine with one third party - Patriot Coal Corporation.  This fact has had no bearing on the parties' arguments or the Court's analysis.

June 2015, which are discussed at length immediately before the prepayment is introduced (in the guaranteed specifications). As a result, the Court finds that Emerald's $500,000 payment undoubtedly served as consideration for the first transaction.

However, the Court recognizes that the sentence in question does not stop after identifying the coal for which the prepayment was intended. Rather, it goes on to state, " . . . and [WWMV and its agents] shall cease all discussions with any third parties . . . regarding the acquisition of rights to sublease or mine the Wildcat mine." (*Id.*) This promise clearly relates to the second transaction, and the Court believes it too induced Emerald's prepayment, at least to some extent. After all, to conclude otherwise would suggest that WWMV *gratuitously* agreed not to negotiate the Wildcat mine with any third parties, which the Court finds is very unlikely. And to the extent one might argue that the P.O. is simply ambiguous on this point, the Court notes that any such ambiguity would be resolved in WWMV's favor, meaning that Emerald's $500,000 payment would be regarded as consideration for the second transaction as well.[7] *B. Perini & Sons v. Southern Ry. Co.*, 239 S.W.2d 964, 966 (Ky. App. 1951) ("No rule is better established than that, when a contract is susceptible of two meanings, it will be construed strongest against the party who drafted and prepared it.").

Overall, the Court finds that Emerald's $500,000 payment served as consideration in two respects. First, it was a deposit on the coal that Emerald should have begun receiving in June 2013; and second, it was given in exchange for WWMV's promise not to

---

[7] There is no doubt that WWMV completely breached its duty under the first transaction. Unless Emerald's payment was also induced by the second transaction, WWMV would have no argument at all regarding the issue of breach. Thus, as the non-drafting party, it is in WWMV's favor that the $500,000 payment be construed as consideration for the second transaction as well.

negotiate rights to the Wildcat mine with anyone but Emerald. While WWMV clearly did not fulfill its obligation under the first transaction, apparently it did honor its promise with respect to the second transaction. Now, the Court must determine whether these circumstances justify rescinding the contract and returning Emerald's payment in full. Stated another way, did the failure to deliver any coal whatsoever under the first transaction constitute a material breach even though WWMV honored its promise under the second transaction to refrain from negotiating the Wildcat mine with any third parties?

A material breach exists where a party "fails to perform a substantial part of the contract or one or more of its essential terms or conditions, the breach substantially defeats the contract's purpose, or the breach is such that upon a reasonable interpretation of the contract, the parties considered the breach as vital to the existence of the contract." *Hodak v. Madison Capital Mgmt., LLC*, 348 F. App'x 83, 90 (6th Cir. 2009) (citation and internal quotations omitted). In determining whether a material breach has occurred, courts also look to the following five factors:

> (1) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (2) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (3) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (4) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking account of all the circumstances including any reasonable assurances; and
>
> (5) the extent to which the behavior of the party failing to perform or to offer to perform comports with standards of good faith and fair dealing.

16

*Bluegrass Equine & Tourism Found., Inc. v. Com.*, Case No. 2011-CA-000218-MR, 2013 WL 1919567, at *15 (Ky. Ct. App. May 10, 2013) (citing Restatement (Second) of Contracts § 241 (1981)).

Based on the Sixth Circuit's standard in *Hodak*, whether a breach is material turns on the relative importance of the unfulfilled promise.  The unfulfilled promise in this case involves approximately 600,000 net tons of U.S. Steel coal priced at $58.85 per net ton, which equates to roughly $35 million dollars overall.  At a minimum, this amount constitutes half of the P.O.'s total value.  But practically speaking, it represents much more, because the second transaction is conditioned upon WWMV acquiring rights to the Wildcat mine, which still has yet to occur.[8]  As a result, the Court does not hesitate in describing the first transaction as "vital to the existence" of the contract, or as involving "essential terms."  And seeing as over a year and seven months have passed since the P.O. was executed, and Emerald has received absolutely no coal from WWMV, the Court can also comfortably say that the purpose of the contract has been "substantially defeated."

The same conclusion is reached based on the approach used in *Bluegrass Equine*. Regarding the first two factors, Emerald has certainly been deprived of a key benefit which it reasonably expected – 600,000 tons of coal – and the Court cannot envision a more adequate way to compensate this loss than by ordering that the prepayment be returned. With respect to the third factor, the Court is mindful that Emerald was at least partially induced by WWMV's promise not to negotiate the Wildcat mine with any third parties.  And,

---

[8] Even if WWMV did obtain such rights, Emerald would still not be obligated to purchase any coal from the Wildcat mine. (Doc. # 1-2 at 8) ("Emerald shall have the exclusive and first right, *but not the obligation* to purchase approximately 600,000 tons of coal of similar quality at the same price from the Wildcat mine.") (emphasis added).

as a result, it is possible that WWMV may incur some forfeiture by refunding the payment in full.  But because WWMV never actually acquired rights to the Wildcat mine, its ability to profit from negotiating that mine would be seriously limited.  Therefore, the Court believes that the amount of forfeiture incurred, if any, would be extremely minimal, and WWMV has presented no evidence to suggest otherwise.

With respect to the fourth and fifth factors, the only potentially relevant evidence is the affidavit of Ralph Ballard, who testified that "WWMV has since obtained the rights to highwall mine the Longbottom lease.  WWMV offered that coal to Emerald.  However, Emerald rejected that offer."  (Doc. #10-1 at 2, ¶ 14).  Because WWMV did not present these statements in the context of the *Bluegrass Equine* decision, the Court is not certain if they are intended to demonstrate WWMV's ability to cure its breach, or if they are supposed to show that WWMV acted in accordance with the standards of good faith and fair dealing.  Either way, it makes no difference.  On summary judgment, the nonmoving party cannot rely on baseless allegations, but instead must "designate specific facts showing that there is a genuine issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The statements above fall woefully short of this standard.  Not only do they fail to specify a date or location, or the amount of coal offered to Emerald, but they say nothing of whether the alleged delivery complied with the many requirements of the guaranteed specifications.[9]

Even if the Court was inclined to believe Ralph Ballard's testimony, the fact that an unspecified amount of coal was offered more than a year after the original due date does

---

[9] Not surprisingly, Emerald denies that this attempted delivery ever occurred. (Doc. # 13 at 5).

little to demonstrate WWMV's ability to cure, especially since the agreement only covered a period of two years.  And because this offer was made only after Emerald filed suit, the Court cannot imagine that any reasonable juror would construe WWMV's efforts as a sign of good faith or fair dealing.

Whether applying the standard in *Hodak*, or weighing the five factors cited in *Bluegrass Equine*, the Court unequivocally finds that WWMV has materially breached its agreement with Emerald.  And based on the strength of the evidence in support of this finding, the Court reiterates that WWMV would be unable to create a genuine issue of material fact even if additional discovery were taken.

       d.       *Emerald is entitled to rescind the contract and recover its prepayment in full.*

When faced with a material breach, the non-breaching party has two options.  First, she can declare the breach to be partial, continue with the contract and bring suit to recover any damages resulting from the partial breach.  *Marley Cooling Tower Co. v. Caldwell Energy & Envtl., Inc.*, 280 F. Supp. 2d 651, 657 (W.D. Ky. 2003).  Or, she can terminate the contract immediately and sue for a total breach.  *Id.*  Emerald has taken the latter approach, requesting that its prepayment be returned in full.  Not only would such relief be highly logical under the circumstances, it would also comport with applicable provisions of the Kentucky UCC, which state that where a buyer cancels her contract because the seller has failed to make delivery, the buyer may recover as damages, *inter alia*, "so much of the

19

price as has been paid." KRS § 355.2-711 (emphasis added). Accordingly, the Court will grant Emerald's Motion insofar as it requests damages in the amount of $500,000.[10]

### 5. Attorneys' Fees

The P.O. states that "[i]n any action where Buyer is the successful party, Buyer shall be awarded reasonable attorney's fees and costs." For the following reasons, the Court will enforce this provision. First, as explained above, the condition precedent identified by WWMV is merely a condition to performance. Thus, even while it has not yet been satisfied, the balance of the contract remains valid. Second, the rules of construction favor enforcement of a contract's terms whenever possible. *See City of Louisa v. Newland*, 705 S.W.2d 916, 919 (Ky. 1986) ("Any contract or agreement must be construed as a whole, giving effect to all parts and every word in it if possible."). And finally, enforcing the provision for attorneys' fees will give effect to the intent of the parties when the contract was executed, which is yet another key rule of contract interpretation. *Keen v. Ross*, 216 S.W. 605, 606 (Ky. 1919). Because Emerald is the successful party on this matter, the Court will grant its Motion insofar as it requests damages for related attorney's fees. Emerald shall file a motion for attorneys' fees within twenty (20) days of the date of entry of this Memorandum Opinion and Order.

### 6. Remaining Claims

Having found that a breach of contract did occur, the Court need not address Emerald's alternative causes of action for promissory estoppel and unjust enrichment. As such, both of these claims are denied as moot.

---

[10] Emerald intends to request additional monetary relief separately from this motion, including consequential, incidental and punitive damages. (Doc. # 8-1 at 1 n.1; Doc. # 8-1 at 7 n.2).

The Court does not consider Emerald's claim for breach of good faith and fair dealing as an alternative cause of action, primarily because it affords the opportunity to seek punitive damages, which Emerald has done.  Nonetheless, under Kentucky law, a claim for breach of good faith and fair dealing requires a showing of dishonesty, deceit, fraud, or seizure of an advantageous business opportunity.  *See Combs v. Int'l Ins. Co.*, 163 F. Supp. 2d 686, 696 (E.D. Ky. 2001).  Emerald has failed to address how WWMV's actions satisfy any of these criteria.  Therefore, this claim is denied.

## III.   Conclusion

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1)     Emerald's Motion for Partial Summary Judgment (Doc. # 8) based on its claim for breach of contract be, and is hereby, **granted in full**;

(2)     Emerald's Motion for Partial Summary Judgment (Doc. # 8) based on all remaining claims be, and is hereby, **denied**; and

(3)     **Within twenty (20) days** of the date of entry of this Memorandum Opinion and Order, **Emerald shall file a motion for attorneys' fees and costs**, supported by affidavit and appropriate documentation.

This 23rd day of December, 2014.



Signed By:

*David L. Bunning*    *DB*

**United States District Judge**

G:\DATA\Opinions\Covington\2014\14-109 MOO Granting MPSJ.wpd